granting injunctive relief. *Ciba–Geigy Corp. v. Bolar Pharmaceutical Co.*, 747 F.2d 844, 850 (3rd Cir. 1984), *cert. denied*, 471 U.S. 1137 (1985).

### B. Enforcing 25 P.S. § 2687 against out-of-county poll watchers violates the United States and Pennsylvania Constitutions

#### 1. Poll watchers are necessary to ensure that the process is conducted fairly and to promote integrity in the outcome of the elections

There is no freedom more fundamental in America than the freedom to vote. It is both a right and a privilege; the integrity of which must, as a matter of principle, be perpetually preserved and protected. It is the integrity of the vote that safeguards the integrity of our democratic process. Open elections are crucial to democracy—a government of the people, by the people, and for the people. Citizens have a fundamental right to a fair and honest election process, and a free and fair election requires ballot security.

Poll watchers are vital to protecting ballot security and the franchise itself, as a right to vote without the necessary structure to administer the conduct of elections renders those votes—and thus that right—ineffective. Consequently, the Supreme Court has recognized that "States may, and inevitably must, enact reasonable regulations of parties, elections and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Political parties and candidates have important interests at stake in elections, and poll watchers serve to protect those interests by preventing malfeasance, misconduct, and technical discrepancies that could alter the valid results of an election.

Pennsylvania's statutory provision for poll watchers can be viewed as a pre-emptive move aimed at promoting the State's compelling interest in ensuring that the process is conducted fairly and to promote integrity in the outcome of the elections. Poll watchers shine a light on the official election process; they mitigate legitimate concerns about the impartiality of

8

election officials and the occurrence of innocent errors by polling staff. Because election officials have significant authority over the conduct of elections, well-trained poll watchers can provide a "check and balance" in polling precincts where there are concerns about official partisan bias. Poll watchers can also be helpful in preventing more than intentional fraud, by identifying and bringing to election officials' attention mistakes in registration or eligibility, which election officials may inadvertently overlook. Poll watchers also monitor the voter verification process and provision of ballots for the voters to cast, and raise challenges concerning suspected ineligible voters. Poll watchers not only serve to stop other citizens from violating election laws, but also to stop government election officials from allowing other citizens to violate election laws.

Poll watchers thus shine a light on polling place procedures to prevent the violation of election law—by the polling place official, the putative voter, or a combination of both—from diluting legal votes. For when unqualified electors are permitted to vote within a district, the legitimate votes of all qualified electors in that district are diluted and their fundamental right to vote is therefore violated. All Americans who are eligible should have the opportunity to vote, but their ballots should not be diluted.

### 2. Enforcing 25 P.S. § 2687 against out-of-county poll watchers violates Due Process and Equal Protection

Voting is a fundamental right protected by the Due Process[2] and Equal Protection[3] Clauses of the Fourteenth Amendment to the United States Constitution. The Equal Protection

---

[2] The Due Process Clauses of the United States and Pennsylvania Constitutions are "coextensive". *Commonwealth of Pa., Dept. of Transp. v. Taylor*, 841 A.2d 108, 114 n.6 (Pa. 2004).

[3] "[F]ederal and state equal protection rights are coextensive." *Robinson Township v. Commonwealth*, 83 A.3d 901, 1117 n.10 (2013) (citing *Driscoll v. Corbett*, 69 A.3d 197, 209 (Pa. 2013); *Erfer v. Commonwealth*, 794 A.2d 325, 332 (Pa. 2002)).

9

Clause prevents the government from treating people differently without sufficient justification. The requirement of equal treatment is particularly stringently enforced as to laws that affect the exercise of fundamental rights, including the right to vote. *See Dunn v. Blumstein,* 405 U.S. 330 (1972); *Harper v. Virginia Board of Elections,* 383 U.S. 663 (1966). The Pennsylvania poll watcher statute arbitrarily and unreasonably distinguishes between voters within the same electoral district by allowing some, but not others, to serve as poll watchers, and is therefore unconstitutional.

The Equal Protection Clause also guarantees the voting populace the right to effectively cast a vote. Therefore, the Equal Protection Clause's coverage extends to the manner of the exercise of the vote, and may not value one person's vote more than another's by allowing a vote to be diluted. On its face and as applied, 25 P.S. § 2687(b)'s residency requirement denies Pennsylvanians the right to effectively cast a vote.

Pennsylvania law prohibits citizens from serving as poll watchers outside their counties of residence. Under 25 P.S. § 2687(b), each poll watcher "must be a qualified registered elector of the county in which the election district for which the watcher was appointed is located." Thus, poll watchers may not serve in districts outside the counties where they live.

Section 2687(b) appears to assume that each district is located in a single county by referring to "*the* county in which the election district is located", (emphasis supplied), but that is often not the case. Instead, most districts include portions of multiple counties, and Section 2687(b) causes particular problems in those districts that straddle multiple counties. In such districts, Section 2687(b) prohibits poll watchers from serving in their own electoral districts in precincts that are in a different county from the district in which the poll watcher lives. The statute thus discriminates not only between Pennsylvanians based on their counties of

residence, but it discriminates between different registered voters *in the same district* based on their counties of residence. Such discrimination is not rationally related to any legitimate purpose of the Commonwealth, and *a fortiori* does not meet the strict-scrutiny test applicable to laws abridging fundamental rights, including the right of political participation.

Under the Due Process and the Equal Protection Clauses, Americans enjoy the fundamental right to participate in politics, whether through speech,[4] voting,[5] participating in political organizations,[6] or running for office.[7] Laws that permit some people, but not others, to exercise fundamental rights—especially the fundamental right to participate in the political process—are subject to strict scrutiny. *See Dunn v. Blumstein*, 405 U.S. 330, 336-37 (1972); *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 629 (1969); *Harper v. Virginia Board of Elections*, 383 U.S. 663, 665 (1966).

Serving as a poll watcher both *protects* these fundamental rights and *is itself* an exercise of those rights. Poll watchers protect the integrity of the voting process, and thereby protect the rights of eligible voters by ensuring that the value of their votes is not undermined or diluted by misapplication of law. That function of protecting the fundamental right to vote is enough by itself to trigger strict scrutiny. *See Reynolds v. Sims*, 377 U.S. 533, 562 (1966) ("Especially since

---

[4] *See Brown v. Hartlage*, 456 U.S. 45, 52-54 (1982); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("[I]t can hardly be doubted that the [First Amendment] has its fullest and most urgent application precisely to the conduct of campaigns for political office."); *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966) ("Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.").

[5] *See, e.g.*, *Wesberry v. Sanders*, 376 U.S. 1, 17-18 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right.").

[6] *See Cousins v. Wigoda*, 419 U.S. 477, 487 (1975); *Kusper v. Pontikes*, 414 U.S. 51, 56-57 (1973).

[7] *See, e.g.*, *Bullock v. Carter*, 405 U.S. 134, 143-44 (1972).

11

the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (identifying "the political franchise of voting" as "a fundamental political right, because preservative of all rights").

Even where fundamental rights are not at issue, the Equal Protection Clause prevents the government from treating people differently without sufficient justification. *See United States v. Windsor*, 133 S. Ct. 2675 (2013); *Romer v. Evans*, 517 U.S. 620 (1996); *City of Cleburn v. Cleburn Living Center*, 473 U.S. 432 (1985). Under this "rational-basis" test, state laws must bear a reasonable relationship to a legitimate governmental interest. *See, e.g., F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920) ("The classification must be reasonable, not arbitrary and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.").

Under 25 P.S. § 2687(b), a Pennsylvania voter living in an electoral district straddling two or more county lines is unable to serve as a poll watcher in the entirety of her own electoral district. This voter therefore is prevented from insuring the integrity of the electoral process, and thus the efficacy of his or her own vote, if the voter wishes to monitor a polling station in the voter's own electoral district that happens to be across a county line.

Likewise, the Republican Party of Pennsylvania, and all of its candidates and registered electors, have a right to have their elections and votes for federal and statewide offices be conducted effectively and meaningfully, such that no vote is diluted or tainted. Poll watchers serve the vital function in elections of ensuring that all votes cast everywhere are legitimate, and do not serve to negate or undermine voter choices made throughout the Commonwealth.

In a county such as Philadelphia, 25 P.S. § 2687(b) acts to arbitrarily and unfairly handicap one political party by perpetuating a chronic inability of one political party to fully and fairly staff polling places with poll watchers, while the other political party is able to fully staff polling places within the county. In the absence of Section 2687(b), the Republican Party of Pennsylvania, and all of its registered electors and candidates, would not be artificially and unlawfully hampered from staffing every county polling station with credentialed poll watchers.

The Pennsylvania statute arbitrarily and unreasonably distinguishes between voters within the same electoral district by allowing some, but not others, to serve as poll watchers. The Pennsylvania statute is therefore unconstitutional, whether the statute is evaluated under strict scrutiny or rational-basis scrutiny.

Whatever the ostensible purpose of the county-residency requirement, there is no reason to believe that registered voters in Pennsylvania are capable of serving that purpose when acting within their own counties, but not when acting in the county next door—or a county across the Commonwealth. The lack of a rational basis supporting Pennsylvania's law is particularly clear when one considers that the law prohibits Pennsylvania citizens—registered Pennsylvania voters—from watching polls *even in their own districts* if they wish to observe voting in a precinct that is located across the county line. The Commonwealth has no compelling interest in arbitrarily restricting the right of any of its citizens from casting a vote, either a vote cast for a candidate whose district covers two counties, or one cast for a national or statewide candidate. Likewise, the Commonwealth has no compelling interest in arbitrarily limiting the right of Pennsylvania voters to meaningfully and effectively cast a vote.

Pennsylvania undoubtedly has a legitimate and compelling interest in ensuring the integrity of the election process. Poll watchers occupy a crucial role in fulfilling that function.

13

But the Commonwealth's county-residency requirement inhibits that function by making it difficult for parties to staff each precinct with poll watchers.

### 3. Enforcing 25 P.S. § 2687 against out-of-county poll watchers violates protected political speech and free association

Once statutorily credentialed as a poll watcher (or an individual who would serve as a poll watcher, but for the residency requirement), that poll watcher engages in core political speech protected by the First Amendment[8] and Fourteenth Amendment to the United States Constitution. Specifically, a statutorily credentialed poll watcher (or an individual who would serve as a poll watcher but for the residency requirement), engages in protected speech by, *inter alia*, reporting incidents of potential violations of the Election Code (or other regulations or criminal statutes) during the conduct of an election. This speech is especially critical to protect when, as here, a voter may cast a vote for a candidate, but be unable to monitor (as a poll watcher) the election for that candidate because the polling place at which the voter wishes to monitor is in the same *electoral district* – but not the *county* – as the voter/poll watcher. Every law that regulates an election, "whether it governs the registration and qualification of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

Poll watchers are also exercising their rights and the Party's rights to speech and political association. Poll watching constitutes free association with candidates, political parties, and political bodies. Poll watchers are representatives of their parties, and poll watchers' function is to call attention—and serve as witnesses—to election irregularities. By interfering with the

---

[8] Article I, Sec. 7 of the Pennsylvania Constitution guarantees at least the same level of substantive free speech protection as the First Amendment of the United States Constitution.

parties' choices of poll watchers, the county-residency requirement abridges those fundamental rights. *Cf. California Democratic Party v. Jones*, 530 U.S. 567 (2000) (striking down a state law interfering with parties' right to choose their own nominees); *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989) (striking down a state law limiting parties' right to choose their own leaders). The county-residency requirement for poll watchers is therefore unconstitutional unless it satisfies strict scrutiny, which requires that the state law be necessary (or "narrowly tailored") to achieve a compelling governmental interest. *See, e.g., Kramer v. Union Free School District No. 15*, 395 U.S. 621, 627 (1969).

The Commonwealth's arbitrary residency requirement for permitting otherwise credentialed poll watchers to participate in the electoral process totally restricts this form of political speech and free association for both poll watchers and the political parties they represent. The Commonwealth has no compelling interest in restricting political speech or free association with Section 2687(b)'s residency requirement.

### C. Plaintiffs will suffer irreparable harm should the Court deny relief

Irreparable injury may be presumed in cases involving an alleged violation of a constitutional right. *See Tenafly Eruv Assoc., Inc. v. Borough of Tenafly*, 309 F.3d 144, 178 (3d Cir. 2002); 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2948, at 440 (1973); *see also generally Golden Triangle News, Inc. v. Corbett*, 689 A.2d 974, 985 (Pa. Cmwlth. 1997) ("We agree that a purposeful suppression of speech by the government constitutes irreparable harm for injunction purposes."); *Pennsylvania Public Utility Commission v. Israel*, 52 A.2d 317, 321 (Pa. 1947) (holding that when the Legislature declares certain conduct to be unlawful, it is tantamount to calling it injurious to the public, and to continue such unlawful conduct constitutes irreparable injury for purposes of seeking injunctive relief);

Denying the requested relief could have a determinative effect on the outcome of the election. In light of the severity of the consequences of not insuring a fair election process that expresses the true will of the people, injunctive relief clearly is appropriate.

**D.      No adequate remedy at law exists**

Since Plaintiffs are not suing for damages, but instead to have this Court "restrain portions of a State statute relevant to their current election process, there is no adequate remedy at law." *Morrill v. Weaver*, 224 F.Supp.2d 882, 893 n.13 (E.D. Pa. 2002).

**E.      The balance of the equities favors granting injunctive relief**

There is no doubt that Pennsylvania has a legitimate interest in ensuring that the process is conducted fairly and to promote integrity in the outcome of the elections. Each illegitimately cast ballot undermines the validity of an election, cancelling out a legally-cast ballot for the opposition, and distorting outcomes. It also undermines an individual's fundamental right to vote by diluting each vote's value.

The chief public policy role of a poll watcher is to observe the election process on election day on behalf of the candidates, political parties, and the voters, to ensure that the process is conducted fairly and to promote integrity in the outcome of the elections. The Supreme Court has repeatedly held that conducting elections fairly and according to law is a compelling state interest. *See Crawford v. Marion County Election Bd.*, 553 U.S. 181, 196 (2008) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."); *see also Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("A State indisputably has a compelling interest in preserving the integrity of its election process") (quoting *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989)); *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (affirming that "a state has a compelling

16

interest in ensuring that an individual's right to vote is not undermined by fraud in the election process"). Voting malfeasance dilutes the pool of votes, thereby distorting election results and undercutting the value of each legitimately-cast ballot. As the Supreme Court noted in *Purcell v. Gonzalez*, voter malfeasance impairs individuals' right to vote "as effectively as by wholly prohibiting the free exercise of the franchise." 549 U.S. at 4 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)).

The compelling interest at play in this matter is as much in preventing voter malfeasance as it is in detecting it. The pre-emptive actions of poll watchers is particularly important in the area of election administration, where accuracy in the vote totals can tip the balance in a close election. Additionally, preserving the fairness and integrity of the electoral process necessarily tends to avoid costly and unsettling post-election court contests.

The Commonwealth has no compelling interest in limiting political speech in this fashion. The Commonwealth's arbitrary exclusion of voters/poll watchers from serving as such in their own legislative district (albeit, across the political line of a county) has real, demonstrable impacts on all Plaintiffs to this action.

For example, Plaintiff the Republican Party of Pennsylvania has an interest in having its poll watchers monitor the polls within Philadelphia County to ensure the integrity of the vote on behalf of its numerous federal and state electoral candidates (both statewide candidates and those running in districts that include Philadelphia County). The Republican Party of Pennsylvania has a corresponding interest in protecting the integrity of the vote on behalf of its registered electors, both those within Philadelphia County and those throughout the Commonwealth, who are voting for federal and statewide Republican candidates.

17

As a result of the Commonwealth's arbitrary restriction on poll watchers, candidates, political parties and political bodies are unjustifiably burdened in their attempts to locate available, qualified registered electors who can serve as poll watchers. As a further result of the Commonwealth's arbitrary restriction on poll watchers, political bodies are even more disadvantaged than the two major political parties.

The Commonwealth's restriction on poll watchers has no rational basis. Poll watchers serve the important purpose of assuring voters, candidates, political parties, and political bodies, who may question the fairness of the election process, that the same is conducted in compliance with the law, and is done in a correct manner which protects the integrity and validity of the vote.

## IV.   CONCLUSION

Our democratic process is best served by the public's confidence in the conduct of elections and their outcome.  Whether a voter's candidate wins or loses, the most important thing is that the public accepts the outcome with the confident knowledge that the election was conducted fairly and according to law.

WHEREFORE, Plaintiffs, the Republican Party of Pennsylvania and duly registered electors of the Commonwealth of Pennsylvania, Monica Morrill, Ralph E. Wike III, Helen Banushi, Ronald J. Ferrance, Jr., Joseph J. O'Hara, Donna Donat, James Caffrey and Gayle Michael, respectfully request that this Honorable Court enter a temporary restraining order and permanent injunction, pursuant to Fed.R.Civ.P. 65(a) and (b), to take effect immediately, enjoining Defendant, the Secretary of the Commonwealth of Pennsylvania, Pedro A. Cortes, and his agents from enforcing 25 P.S. § 2687 against out-of-county poll watchers, until such time as the Legislature enacts remedial legislation that cures the constitutional defects of that provision.

Respectfully submitted,

/s/ Scot R. Withers
LAMB MCERLANE PC
Scot R. Withers
24 E. Market St. PO Box 565
West Chester, PA 19381
Phone: 610-430-8000
Fax: 610-696-6668
Attorney ID 84309

OBERMAYER REBMANN MAXWELL &
HIPPEL, LLP
Rebecca L. Warren
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Phone: 717-221-1602
Fax: 267-675-4781
Attorney ID 63669

THE BANKS LAW GROUP
Matthew B. Banks
845 North Park Road, Suite 102
Wyomissing, PA 19610
Phone: 610-816-6414
Attorney ID 312355

*Attorneys for all Plaintiffs*

***OF COUNSEL, REPUBLICAN PARTY OF
PENNSYLVANIA:***
OBERMAYER REBMANN MAXWELL &
HIPPEL, LLP
Lawrence J. Tabas
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Phone: 215-665-3158
Fax: 267-675-4781
Attorney ID 27815
*Attorney for Plaintiff Republican Party of
Pennsylvania*

**APPENDIX "A"**

PRINTER'S NO. **34**

**THE GENERAL ASSEMBLY OF PENNSYLVANIA**

# HOUSE BILL
## No. 29   Session of 2015

INTRODUCED BY SACCONE, BARRAR, GILLEN, McGINNIS, GABLER, EVERETT, METCALFE, TRUITT AND GIBBONS, JANUARY 21, 2015

REFERRED TO COMMITTEE ON STATE GOVERNMENT, JANUARY 21, 2015

AN ACT

1  Amending the act of June 3, 1937 (P.L.1333, No.320), entitled
2      "An act concerning elections, including general, municipal,
3      special and primary elections, the nomination of candidates,
4      primary and election expenses and election contests; creating
5      and defining membership of county boards of elections;
6      imposing duties upon the Secretary of the Commonwealth,
7      courts, county boards of elections, county commissioners;
8      imposing penalties for violation of the act, and codifying,
9      revising and consolidating the laws relating thereto; and
10     repealing certain acts and parts of acts relating to
11     elections," in district election officers, further providing
12     for appointment of watchers.

13  The General Assembly of the Commonwealth of Pennsylvania

14  hereby enacts as follows:

15      Section 1.  Section 417(b) of the act of June 3, 1937

16  (P.L.1333, No.320), known as the Pennsylvania Election Code,

17  amended October 8, 2004 (P.L.807, No.97), is amended to read:

18      Section 417.  Appointment of Watchers.--

19      * * *

20      (b)  Each watcher so appointed must be a qualified registered

21  elector of [the county in which the election district for which

22  the watcher was appointed is located] this Commonwealth. Each

23  watcher so appointed shall be authorized to serve in the

1  election district for which the watcher was appointed and, when
2  the watcher is not serving in the election district for which
3  the watcher was appointed, in any other election district [in
4  the county in which the watcher is a qualified registered
5  elector] <u>located in the same county as the election district to</u>
6  <u>which the watcher is appointed</u>: Provided, That only one watcher
7  for each candidate at primaries, or for each party or political
8  body at general, municipal or special elections, shall be
9  present in the polling place at any one time from the time that
10 the election officers meet prior to the opening of the polls
11 under section 1208 until the time that the counting of votes is
12 complete and the district register and voting check list is
13 locked and sealed, and all watchers in the room shall remain
14 outside the enclosed space. It shall not be a requirement that a
15 watcher be a resident of the election district for which the
16 watcher is appointed. After the close of the polls and while the
17 ballots are being counted or voting machine canvassed, all the
18 watchers shall be permitted to be in the polling place outside
19 the enclosed space. Each watcher shall be provided with a
20 certificate from the county board of elections, stating his name
21 and the name of the candidate, party or political body he
22 represents. Watchers shall be required to show their
23 certificates when requested to do so. Watchers allowed in the
24 polling place under the provisions of this act, shall be
25 permitted to keep a list of voters and shall be entitled to
26 challenge any person making application to vote and to require
27 proof of his qualifications, as provided by this act. During
28 those intervals when voters are not present in the polling place
29 either voting or waiting to vote, the judge of elections shall
30 permit watchers, upon request, to inspect the voting check list

1  and either of the two numbered lists of voters maintained by the
2  county board: Provided, That the watcher shall not mark upon or
3  alter these official election records. The judge of elections
4  shall supervise or delegate the inspection of any requested
5  documents.
6      * * *
7      Section 2.  This act shall take effect in 60 days.

**APPENDIX "B"**

# Pennsylvania House of Representatives

10/02/2016 02:58 PM

http://www.legis.state.pa.us/cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=H&SPick=20150&cosponId=15453

Home / House Co-Sponsorship Memoranda

# House Co-Sponsorship Memoranda

## House of Representatives
## Session of 2015 - 2016 Regular Session

### MEMORANDUM

**Posted:** December 2, 2014 12:16 PM
**From:** Representative Rick Saccone
**To:** All House members
**Subject:** Amending the Pennsylvania Election Code, former HB 1827

Currently, the Election Code of 1937 requires watchers to be registered voters of the county in which the election district for which the watcher was appointed to is located. In the near future, I will be introducing legislation that will permit a registered voter of this Commonwealth to be appointed as a watcher in any election district located in Pennsylvania.

I believe it is arbitrary to limit the ability of a registered voter to serve as watcher outside of his or her county of residence. Many of the Commonwealth's elections have statewide and federal implications, which mean Pennsylvania's registered voters, regardless of location, have a vested interest in ensuring that the electoral process is properly administered in every election district.

Even in State Assembly races, districts encompass more than one county. This legislation would allow poll watchers, recruited by a candidate, to work in any county where that person is needed and not limited to only the county where the poll watcher resides.

I encourage you to support this good government legislation.

---

 Introduced as HB29